of the morning is Berkowitz against Automation Aids. Mr. Lawrence, good morning, your honors. May it please the court, my name is Cleveland Lawrence III. I'm here on behalf of the relator and the appellant in these proceedings, Jeffrey Berkowitz. I'm joined by my co-counsel from the Ben and Weitzner firm, Linda Weitzner and Dan Hergott. And with this appeal, we seek to reverse the district court's denial or dismissals of our claims against the nine defendants in these proceedings on the basis of Rule 9b and Rule 12b-6. We also seek to affirm the district court's denial of the defendant appraises technology's motion to dismiss on the basis of the False Claims Act First to File provision. With respect to the dismissals, the district court committed several reversible errors here. Notably, the district court misapplied both Rule 12b-6 as well as Rule 9b. With respect to Rule 12b-6, the district court failed to view our factual allegations in the light most favorable to the relator here and found that we failed to adequately plead scienter, even though we're at the motion to dismiss stage, a stage at which scienter is not properly decided. In addition, the district court- Would you agree that at some point, Mr. Berkowitz will have to identify one or more persons within each of the defendant companies who had culpable knowledge of each of the key aspects of the alleged fraud? I respectfully say no, that we do not have to identify specific individuals within each of these nine defendants' companies. Not at any point? Not at any point in the litigation if it goes forward? Well, certainly once we have the benefit of discovery, we'll be able to make clearer factual allegations. Certainly, information about the personnel at each of these defendants' companies over the multi-year period that we've alleged this fraud occurred is information that's peculiarly in each defendant's possession. And as this court has held in cases like Corley and others, because that information is in the defendant's possession and solely in their possession, and certainly employees may have changed over the years, we may be talking about different departments within each of these defendants' companies, and our relator does not have that level of information. But that information should be gleaned once we get into discovery. And certainly at that point, we will be able to identify who those individuals are or were. And what my question is, was that you're going to have to do that? The false claim... Once after discovery... Well, certainly, corporations act through people. But here, with respect to the knowledge question, Judge Robner, the False Claims Act makes clear that knowledge can be established through reckless disregard. And here, with respect to the False Claims Act, that seems to only invoke the actual knowledge portion of the False Claims Act's scienter standard. And so here, where we have an issue where individuals may have recklessly disregarded whether or not their respective companies' representations to the United States of America were false, it's nearly impossible to plead which employees failed to act or which employees... Of course, I think that we're at cross-purposes. At this point, it's one thing. After, if the case goes forward, you will have to, will you not, identify one or more persons within each of the companies? I think that we... Have you had palpable knowledge, or are you saying you're never going to have to do that? I apologize, Judge. Or you may never have to. What exactly are you saying? The False Claims Act doesn't require relators, or even the government, for that matter, any plaintiff, to identify individual employees of a defendant corporation. This Court has held on multiple occasions that relators satisfied the who question of the newspaper questions the Court referred to in cases like DeLeo. We satisfied the who question simply by asserting which defendants' companies engaged in the fraud. And here, we have multiple defendants, and so certainly the onus is on us to differentiate the conduct committed by each of those defendants. But the False Claims Act does not require that we provide the level of granularity by asserting which individual employees, which may have been multiple employees involved over the course of many years, engaged in the specific frauds that we've alleged. I do think that once we engage in discovery and we can get more information about the transactions that we've able to plead that level of granularity, but I do not think that the False Claims Act requires it, Your Honor. In addition, with respect to that issue, the District Court, by requiring such detailed pleading with respect to individual employees who had knowledge of not only the company's responsibilities to provide only TAA-compliant products to the government, the fact that the companies were not in fact doing so, as well as that their certifications to the government, the invoices that they submit implied that those products involved were TAA-compliant, that arises to an actual knowledge and specific intent standard that the False Claims Act more or less explicitly rejects. And so the District Court certainly went too far in requiring that level of pleading, both because a relator doesn't have access to that information, and so a reduced or more lenient or relaxed pleading standard is required, as the Court announced in cases like Corley, but also because the False Claims Act, as well as Rule 9b, made clear that relators are not required to plead such a level of granularity simply to provide notice to the defendants. Here, we have alleged the representative examples of thousands of products that were sold, accounting for millions of dollars in sales by each defendant, so certainly each defendant is on notice of what fraud we are alleging here, and have the capability of going to those specific transactions and so there is no violation of either Rule 9b or Rule 12b6 or any pleading deficiency with respect to the False Claims Act's own language by virtue of the fact that we have not identified specific employees of any of the defendant companies. Could it be, as the defendant suggests, that the defendants were selling a different version of a particular product that has the same product number, but is manufactured a designated country, whereas an earlier or later version was not? Interestingly, none of the defendants have alleged that the transactions, the specific transactions involving the specific products that we've alleged, involve TAA-compliant products. Instead, the defendants have raised numerous hypothetical questions, and at the pleading stage, where we have alleged specific facts with respect to each of these defendants and each of their sales, it's incumbent upon this Court and on the District Court to accept those factual allegations in the light most favorable to us, and instead, it appears that the District Court accepted those allegations and viewed them in the light most favorable to the defendants, to the extent that the District Court relied on those hypotheticals in its reasoning. I'm trying to understand why this is fraud as opposed to a breach of contract. What was the government defrauded out of? What money was improperly obtained as a result of this fraud? All of the money for all sales of products that originated in non-TAA-compliant countries. The federal government, for some 40 years now, has maintained under the Trade Agreements Act that the United States does not trade with certain countries, including countries like China or Malaysia, and so when a defendant company sells products to the government under the guise of TAA compliance, the government has been defrauded and the purposes of the TAA have been undermined. So the full value of the contract, even though the government got whatever it was buying for and maybe at a lower price than had there been TAA compliance? Well, respectfully, Judge, the government did not, in this instance, get what it thought it was paying for because the government was receiving products from non-compliant countries when it, in fact, believed that it was receiving products from the U.S. Certainly it shouldn't happen. I mean, there should be compliance with the TAA, but is it fraud where they, with a certification that, whether, I mean, is the certification itself show fraud as opposed to a breach of a contract? Yes, it's a fraud because a misrepresentation is being made, and here we have both an express misrepresentation as well as implied false representations. At the outset of each of these defendants' contracting process with the GSA, they were all required to submit express certifications that they would only provide the government with TAA-compliant products throughout the life of the contract. Moreover, they all promised that they would specifically highlight any products that may have come from a non-designated country if situations changed or the product was no longer sourceable from a designated country. These defendants agreed that they would notify the government of any discrepancies with their products, and so that created a continuing obligation with each of these defendants through the point of sale and delivery to notify the government if there was anything wrong with any of the products that were being sold. Here, those certifications were false because none of those defendants alerted the government that the products- Where does this continuing obligation come from? It comes from the express TAA certification that's made at the contract outset and supported by the FAR provision that makes clear that the government contracting officer will continue to rely on that initial representation unless told otherwise. In addition, at the point of sale, a representation is made when the invoice is submitted to the government, and that's an implied representation that the invoice is eligible for payment. The very act of submitting the invoice under those circumstances where a defendant has made this initial promise to the government, has told the government that we will let you know even up to the point of sale if there's any issue with any of our products, and there's a FAR provision that makes explicit that the government will continue to rely on that initial certification unless told otherwise, the very act of submitting the invoice to the government tells the government something. It tells the government that this is an ineligible bill for payment, that all the products that are being sold are TAA-compliant, and this claim should be paid. Those claims were also false. Those representations were also false because the products underlying these sales did not come from TAA-compliant countries. So here we have both a misapplication of Rule 9b as well as a misapplication of Rule 12b6, both of which can be remedied with a reversal and remand. I'd like to reserve the remainder of my time for rebuttal. Certainly, Mr. Lawrence. Thank you. Mr. McLaughlin. Thank you, Your Honors. May it please the Court. My name is Brian Tully McLaughlin, and I'm counsel for three of the defendants here, and I'm arguing on behalf of all nine defendants today. The judgment of the District Court should be— Well, I'd like to start you out, because in terms of the notice function of Rule 9b, in what sense does the complaint leave your clients in the dark? I mean, can't the defendants use the exhibits attached to the complaint, track down the relevant products sold, ascertain whether the products were from designated countries or not? And if not, whether that was or was not disclosed to the government? And, you know, who within the company was responsible? Certainly, Your Honor. The problem with the complaint here, in terms of the particularity, is that which it leaves out, which is that you have some detail, I'll concede, as to sales. And that's what the relator has put in his complaint. He says, I've collected sales information, such as a product ID, and an agency, and a sale date, and an amount. What he leaves out is the heart of what is required under Rule 9b at this stage, which is how it is that those sales, he says, are noncompliant. He says, I know they're noncompliant because I reviewed something. He doesn't include any of that information in his complaint, and therefore we're left at a loss to understand, is he saying it's from one country or another, and how are we meant to go research those? And I should note here, it's important to understand that the GSA schedule and the supply chain is very dynamic. So you may have a product that is being manufactured by the same manufacturer in a designated country at one point, and then a non-designated country at another. Same product ID. They might be doing the same thing at the exact same time, in fact, which is why we pointed out to this Court the Foyard case from the D.C. Circuit, where that was recognized, that there may be different versions of the exact same product with the same product ID that are manufactured in a designated versus a non-designated country. Sounds like you can't certify. You shouldn't be certifying. You never know. That's, Your Honor, is right on that problem, but I agree with that. So these are the types of details that we need some basic detail as to how it is that the apparent lists that are referenced by the relator show, or would show, if we went into discovery, that these products were actually from non-compliant countries. All we have here is a conclusory assertion. They are from non-compliant countries because I looked at them. I, the relator. And that is not good enough at this point. So I can see we have some sales data, but that is really the heart of the issue. Where did these product lists come from? Who are they from? Do the defendants have those lists? There are no factual allegations in this complaint that go to any of those critical, critical questions at this stage. And Rule 9b serves a gatekeeping function. It heightens the particularity required so that defendant's reputation can be protected from harm. It requires more than the usual investigation. This court has said that in many cases, and that's really the problem here. The other thing I would, with the 9b issue, the other thing I would note about 9b is that the relator has now made a clear concession in his reply brief about the actual requirements about selling compliant or non-compliant products that he says are the heart of the basis for a fraud action here. He certainly has extensive paragraphs in the complaint about FAR clauses and GSA contracts, but he then has this paragraph, which we pointed out in our brief, in which he says, and those clauses about compliance, they should have been in the defendant's contracts, each one of them. We pointed that out in our brief, and his reply at 15, he says, I can't plead with particularity, the details of those contracts, but I should get a pass because those are something that's in the possession of the defendants only. That's not correct. Those are contracts with the government. They're not uniquely in the defendant's possession, and he can't get a pass on the most basic underlying requirement for him to take a fraud case forward. So those are my two issues with the 9b issue and whether or not he's pled with particularity that the products were, in fact, from a non-compliant country as opposed to they could have been from one or the other. He doesn't show us anything to plausibly give him an inference that they are. Judge Chang thinks that Mr. Berkowitz is required to identify individual employees of each defendant who had culpable knowledge, you know, that the transactions violated the designated country requirements. But it seems to me that is the sort of information that would be within the exclusive knowledge of the defendants. So what I'm wondering is if you agree or disagree that he, Mr. Berkowitz is required to identify culpable employees by name or, you know, in some other manner. Your Honor, so whether he's required to do it by name or some manner, I would agree with you that that level of specificity is not strictly required at this stage. Now, I have a few other comments to make in response because I don't think that ends the question or the answer, which is that, first of all, I'm not sure that the district judge, I think perhaps he could have worded it more artfully, but I'm not sure that he actually required an individual to be named. But it is true that we pointed out in our brief that there is case law that suggests that while identifying a particular individual is not a strict requirement at this stage, it certainly is something that the court can consider in its overall analysis of whether the complaint has been pled with particularity. I would say that in response to counsel's arguments that certainly if this case were to go into discovery and beyond, which it should not, that corporations only act through individuals and that that kind of specificity would at least later be required. However, the key here is not about naming one individual or another from each of these companies. It's the fact that there is simply nothing factually alleged that would lead to a reasonable inference that this is a fraud action, that the companies sold noncompliant goods knowingly or with reckless disregard as opposed to a breach of contract. So certainly if you were to accept that he's pled with particularity that he sold, that the defendants sold noncompliant goods, he still hasn't provided any factual allegations as to how that was done knowingly. And we pointed out, for instance, the Fowler case from the Seventh Circuit, which I think is right on point here. That was the Seventh Circuit affirmed the dismissal of an FCA action and it said expressly that you have to make a distinction between breach versus fraud, and that distinction is at the pleading stage even to provide some kind of factual allegation that would show that the conduct, even if it breached the contract or violated a regulation, was done with some kind of knowledge, reckless disregard. And in that case, the plaintiffs pleaded with the court saying, we have hundreds and hundreds of pages in our complaint, extensive exhibits, just like the relator does here. And the court said, that's not enough. You need the factual allegations as to scienter. What about the requirement for a certification though? Was that present in that case? Because the argument here is that you had an obligation to affirmatively certify that these products were not from the wrong countries. And by certifying that and it's false, when it's false, the certification requires you to have knowledge. When you're wrong, isn't that a false statement? I can't recall expressly whether there was a certification at issue there. Of course, I would point out that, again, he hasn't, I don't think, sufficiently pled that any of the defendants actually did make a certification. But even so, it's been referred to as it's a certification that's made earlier before the goods are sold, before the products are sold. So it's something of a promise. And here the allegation, or I guess the argument, is that that's being renewed every time that a sale is made. But what's critical, I think, as to scienter is the allegations that he pleads that you could consider factual allegations versus that which he does not. He does plead that you had a certification. You had a duty to look for the goods being noncompliant or not. And then he says that you did it. You sold noncompliant goods. Conclusion, you did it knowingly or with reckless disregard. In fact, in the reply brief, they say, if you did look at the country of origin data, then they did this with actual knowledge. And if they didn't, they must have had reckless disregard. What is missing there? The factual allegation that they had the data that the relator says he relies on. He says he knows that it, that the products were from noncompliant countries. He doesn't say anything about whether the defendants knew that, even to suggest that they had this data in their possession, that they either looked at it or they didn't. How is it that he, how is it that the defendants acted with reckless disregard or actual knowledge as opposed to that they just didn't know? He has to plead at least something to create an inference, as opposed to right now, it's just simply plausible that it's a breach, assuming they're noncompliant, versus that they did something with actual knowledge or even a reckless disregard. And again, I mean, it's not just the Fowler case. It's case after case. The relator suggests that the knowledge inquiry is not appropriate at this stage. That's incorrect. There's a certain level to which it can only be analyzed, but he has not even begun to met that level, to meet that level. And the district court properly recognized that, even if it, even if its language was perhaps not the most artful. One other point on that is that, and we pointed out the Marshall case on this, is that it's one thing to say you knew that you had a contractual obligation, even that you signed a certificate. It's another thing, as the Marshall case held and the Grenador case held, to know that you were violating that obligation, that you were violating a certification that you made. And that is, again, what is missing here. No factual allegations that would allow this court or the district court to say there's a reasonable inference that there was not knowing sales of noncompliant products. The one other thing I'm just going to point out with my remaining time is just to ensure that it's recognized that the relator here never formally sought some leave to amend, and I noticed that they dropped a sentence or two in their reply brief about that, so I just thought I would briefly mention that at the district court level, the judge denied, did not, dismissed with prejudice and did not allow any leave to amend, noting that there had been no formal request made. And this is an abuse of discretion standard, and I just wanted to cite to your honors the affirm the dismissal and the denial of a leave to amend where exactly that was, the failure was failing to formally seek it, as well as failing to provide detail in the request, however informally made, as to what it was that the, what detail would be provided if an opportunity was presented. Again, that's what happened here. So there's no abuse of discretion here, and even if there had been an issue at the district court level, of course the relator here didn't actually challenge the denial of leave to amend by the district court in his opening brief. He mentions it in a sentence or two in his reply, that's too late, that's two waivers, and here two strikes is good enough, you're out. So I just wanted to make sure I mentioned that, but barring any other questions, I will cede my time. Thank you, your honors. Thank you, Mr. McLaughlin. Mr. Mead. Thank you, your honor. Very briefly, my name is Chris Mead, I'm here to argue APPRISA's unique alternative ground for affirmance, which is the first to file bar. And I'd like to start with the appendix at page 78, which is the relator's complaint in this case. Mr. Berkowitz had to start somewhere. He had to have noticed that one product sold by a particular manufacturer, he had a belief or a suspicion that it was manufactured in a non-TAA compliant country. So what did he do? He then looked at a bunch of products sold by the defendants, manufactured by other manufacturers. He did precisely what Chavanagh says. In other words, he looked at facts that would lead you to launch an investigation in direct consequence. The reason I suspect that the first file DC complaint limited itself, and forgive me,  Thank you, Mr. Mead. Thank you. Thank you. Mr. Lawrence, anything further? Yes, Your Honor. Just a few quick points before we conclude. With respect to the issues regarding whether these defendants knew that the products they were selling could have come from non-compliant countries, that's the very definition of reckless disregard. If these defendants didn't have access to the information that would tell them where the products came from, then how could they have made any representations to the government that the products came from good countries? The implied false certifications are supported by that very statement that, well, we didn't know. Well, then you couldn't have certified to the government that these were good products if you didn't know. With respect to the specific employee question, just to quickly return to that, I think it's important for the court to consider these allegations from the perspective of the government, which can also be a plaintiff in false claims act cases, of course. Certainly, the government doesn't have access to the specific employee information in each of these defendant companies and wouldn't be able to meet Judge Chain's pleading standard either. With respect to the question of whether we have alleged facts that would support a reasonable inference that these defendants had knowledge that they were committing fraud on the government, the court has discussed in cases like Lehmer's that profit motive can be used to infer intent. Certainly, given the number of sales and the dollar amounts and the number of products here, we can establish that that inference is a proper one to make. Quickly with respect to the first to file question, I think that the court should also be reminded that the United States, the other side of all of these transactions, has submitted a statement of interest in the district court proceedings, basically making clear that with respect to the very same manufacturer, APC, the defendant United also raised the first to file question in the United States. Thank you, counsel. The case is taken under advisement.